IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JULIO C. DE LA SANTA LOPEZ

Plaintiff

vs                                                    CIVIL 09-1383CCC

CONSORCIO DEL NORESTE;
CARLOS RODRIGUEZ-RIVERA;
JOHN DOE, X, Y, Z all in their official and
personal capacities; and all in
representation of their respective conjugal
partnerships

Defendants

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 action where plaintiff, Julio C. La Santa-López (La Santa), seeks redress from defendants Consorcio del Noreste (Consorcio) and its Executive Director, Carlos Rodríguez-Rivera (Rodríguez), for claimed violations to his free speech and due process rights under the First and Fifth Amendment to the U.S. Constitution. Supplemental claims under various Puerto Rico laws are also raised. Plaintiff avers that he was retaliated against after he criticized his employer's alleged practice of manipulating data in order to receive more federal funds. Before the Court now is the Motion for Summary Judgment filed by defendants on March 29, 2010 (docket entry 25), plaintiff's Opposition filed on April 29, 2010 (docket entry 31), and defendants' Reply to the Response filed on May 24, 2010 (docket entry 38).

The core, non-disputed facts follow: Consorcio is an entity created by law to administer federal funds received under the Workforce Investment Act of 1998. It is composed by the municipalities of Canóvanas, Ceiba, Culebra, Fajardo, Loíza, Luquillo, Naguabo, Río Grande and Vieques, and run by a Board of Directors whose members are the mayors of these municipalities. Plaintiff La Santa started working for Consorcio on March 9, 1993 as its Director of Management Information System (MIS), but was reassigned

CIVIL 09-1383CCC                                        2

in January 2005 to a career position as Sub-Director of MIS.  From June 7, 2007 until October 1, 2008 he served as interim director at said department.

On September 11, 2008, plaintiff was absent from his job due to medical reasons. He returned to the office on September 15, 2008, and was surprised to find that "execution goals"[1] for the office, which had barely reached 38% on the date he was absent, now surpassed the 90% goal set by Consorcio.  Meeting the execution goals set by the program was important, as it apparently would allow it to receive more federal funds.  Plaintiff reviewed the data he had used to establish the compliance goals and found that some items, particularly the dates on the "reports on program participants' exit date,"[2] had been altered causing the execution percentage to change.  Plaintiff made remarks to three of his co-workers denoting his surprise on the changes in the execution goals and ironically stated that he thought it was a miracle. Plaintiff admitted during his deposition that he never attempted to verify with anyone at Consorcio why the changes he alleged were fraudulently made had been done.

On September 19, 2008, plaintiff had an argument with defendant Rodríguez, Consorcio's Executive Director, when he expressed his belief that the execution goals had been fraudulently altered in his absence.  Plaintiff understood that it was part of his official

_____

[1]  Plaintiff never identifies in his complaint to what exactly those "execution goals" referred.  The record, as developed for summary judgment purposes, has filled that gap. As plaintiff himself explained during his deposition, the Consorcio received federal funds under the Workforce Investment Act for the purpose of training unemployed persons and assisted them in getting a job.  For each participant in said program, the Consorcio developed an Individual Employment Program.  The participant had to be followed-up on his/her activities after completion of the training and, if no additional services were provided and/or requested from the program during a 90-day window following the last service provided, he/she had to be discharged from the program with the effective date being the last day he/she received services.  The goal of the program was to close at least 90% of its participants after they had been trained/retrained.

[2]  Again, not much information is provided in the complaint about the nature of these reports.  But see note 1 infra.

CIVIL 09-1383CCC                              3

duties to report the situation to Rodríguez so as to avoid being later held responsible for it. In essence, he stated during his deposition that he did it to save his responsibility as MIS Director and also that of Rodríguez as Executive Director. Rodríguez verbally admonished La Santa, and, later instructed him in a letter dated September 19, 2008, to put those allegations in writing. On September 29, 2008, plaintiff submitted a letter to Rodríguez informing him that he had prepared the report requested, which was attached and dated September 25, 2008, and also announcing that he would be submitting a complaint against him before the Government Ethics Office denouncing the alteration of the compliance data as well as other irregularities he had observed during his administration of Consorcio, such as, the use of public property for personal purposes by a Consorcio employee with Rodríguez' authorization, Rodríguez' absence from work for extended periods of time to take care of his sick mother without reporting it to his superiors, and Rodríguez' appointment of an allegedly unqualified person to head a division at Consorcio based only on his political affiliation. Plaintiff testified at his deposition that the report was prepared on Consorcio's official paper because it was part of his official duties. Plaintiff served a copy of his September 25, 2008 memorandum to Alejandro Riera (Riera), then the Executive Director of the Council for the Development of Occupational and Human Resources (Council), on October 7, 2008. The Council was, in fact, the entity in charge of allocating to the different Consorcios the federal funds it received from the U.S. Department of Labor under the Workers' Investment Act for the purpose of training unemployed people and retraining people that had been dismissed from employment. The Council also transmitted the standards set by the U.S. Department of Labor on the use of those funds to the different Consorcios, and had to report back to the U.S. Department of Labor on their use. Plaintiff also sent his denunciations to the President of the Board of the Consorcio on October 2, 2008, as well as to other mayors whose towns were part of the Consorcio, by copying them with his September 25, 2008 memorandum to Rodríguez. At his deposition, he accepted

CIVIL 09-1383CCC                              4

doing it "as an employee of the Consorcio trying to show that there was something fishy going on . . ."  Transcript of deposition, at p. 71, lines 5-8.  Plaintiff additionally filed complaints about the alleged manipulation of the Consorcio's statistics and data in order to receive additional federal funds before other governmental instrumentalities, such as the Government Ethics Office on December 18, 2008 and the U.S. Department of Labor by letter dated December 12, 2008.  Although he similarly claimed in his complaint having requested an investigation from the Puerto Rico Department of Justice, during his deposition he clarified that he had not done so but that Riera did.  It does appear from the record that plaintiff was summoned by the prosecutor in charge of said investigation to provide testimony on October 8, 2008 and that he also submitted to him on November 25, 2008 documents related to the alleged use by a Consorcio employee of an official vehicle for personal matters regarding what he considered slanderous statements made about him and other Consorcio employees on an anonymous flyer distributed at Consorcio.  However, there is no evidence that defendant Rodríguez, or anybody else at Consorcio for that matter, ever knew that plaintiff had provided both testimony and documents to the prosecutor in charge of the investigation.

On September 29, 2008, Rodríguez ordered that plaintiff's allegations be internally investigated by Consorcio's internal auditors.  Mr. Orlando Pérez-Estrada, the Director of the Participants Services Department at Consorcio, responded to plaintiff's imputations of manipulation of statistics in a written answer dated September 30, 2008, through which he denied the allegations.  Pérez claimed instead that all changes made in the data entered on the system were done, after consultation and per instructions received from an officer of the Council, to correctly reflect the information contained in the physical files of the Program's participants which an internal review had shown were incorrectly imputted by plaintiff.  Plaintiff admitted in his deposition that the role of the MIS Department was to input into the system the data received from the local field offices about the participants of the program,

but that the responsibility for the collection of that data was in the hands of the different field offices which were supervised by the Participants Services Department.   Plaintiff's allegations were also denied by an advisor to the Executive Director, José González-Calderón, who, in a memorandum dated September 30, 2008, similarly stated that the changes made responded to discrepancies found between the physical files and the information reflected on the system and particularly noted that there were many instances where the information on the date in which a program participant had exited the same had still not been entered in the system.   On October 16, 2008, Consorcio's internal auditor, Madeleine Guzmán, issued a preliminary report on the investigation that had been ordered by Rodríguez finding that plaintiff was the person that had changed the dates of exit from the program in some of the participants' records, without authorization.

Plaintiff claims that as a result of his denunciations, on October 1, 2008 he was terminated as interim director of Management Information System at Consorcio and returned to his career position as sub-Director, which resulted in the immediate removal from his office and placement in a cubicle, and in other events that took place gradually such as being deprived from accessing a computer and a fax, the removal of the two employees that used to work for him, and being instructed not to attend a specific meeting of Consorcio's Board.   In his Statement of Material Facts in Controversy filed with his Response to the Motion for Summary Judgment (docket entry 31) he has added two other incidents not mentioned in the complaint that he claims were also in retaliation for his allegedly protected speech: an attempt by Consorcio' sub-Director, Benjamín Ortiz, to fabricate a charge of sexual harassment against him, and the circulation of an anonymous flyer with slanderous statements about him and other Consorcio employees.   Nonetheless, he avers that he continued providing information to the entities that were investigating his denunciations of irregularities at Consorcio.   Due to it, he alleges that his work environment became oppressive and humiliating, forcing him to submit his resignation on December 15,

CIVIL 09-1383CCC                                    6

2008[3] with an effective date of December 31, 2008. Thus, he pleads that he was subject to retaliation by Rodríguez and stripped of his First Amendment right to criticize his employer's policy and to testify in hearings before an investigative body about the matters of public concern denounced by him, as well as deprived of his liberty and property without due process of law.

Defendants have moved for summary judgment on various grounds: (1) that the complaint fails to state a claim for relief under the First Amendment since plaintiff's statements denouncing the fraudulent alterations of performance data at Consorcio were made pursuant to his official duties and not speaking as a citizen on a matter of public concern, (2) that the complaint similarly fails to state a claim for relief under the Due Process Clause since plaintiff both lacked a property interest in the position of Interim Director of MIS, which was a trust position, and was not constructively discharged from his career position, and (3) that the complaint fails to state a claim under Puerto Rico's Act No. 115, which prohibits adverse employment actions against employees that offer testimony, expressions or information before a legislative, judicial or administrative forum of the Commonwealth, as defendants claim that any adverse employment action suffered by plaintiff did not result from his participation in any such protected activity.  In his response, plaintiff counters that the nature of his statements - whether made pursuant to his official duties or as a citizen - is a determinative issue of fact which is allegedly in dispute, thus precluding the issuance of summary judgment.  He also claims that as the working conditions he had to endure after his denunciations were so oppressive and humiliating, he had no choice but to resign and hence suffered a constructive discharge.

Although Fed.R.Civ.P. 56 was amended effective December 1, 2010, after the filing of the motions here, the substantive standard for summary judgment remains unchanged.

—————————————

[3]  The resignation letter, although dated December 16, 2008, was received by Consorcio's Human Resources Department on December 15, 2008.

CIVIL 09-1383CCC                              7

Tropigas de Puerto Rico, Inc. v. Certain Underwriters At Lloyd's, ___ F.3d ___
(1st Cir. 2011), 2011 WL 834072.  To grant such a motion, it is still required that there be no
genuine dispute as to any material fact and that the movant be entitled to judgment as a
matter of law.  Fed.R.Civ.P. 56(a).  An issue is "genuine" if the evidence on record permits
a rational factfinder to resolve it in favor of either party.  See Medina-Muñoz v. R.J. Reynolds
Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).  A fact is "material" if its existence or
nonexistence has the potential to change the outcome of the suit.  See Martínez v. Colón,
54 F.3d 980, 84 (1st Cir. 1995).  The moving party bears the initial burden of informing the
trial court of the basis for his motion and identifying the portions of the pleadings,
depositions, answers to interrogatories, admissions, and affidavits, if any, that demonstrate
the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett,
477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986).  Once the moving party has
accomplished this feat, the burden shifts to the nonmoving party, who must, with respect to
each issue on which he would bear the burden of proof at trial, demonstrate that a trier of
fact could reasonably resolve that issue in her favor.  Id. at 324, 106 S.Ct. 2548; DeNovellis
v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).  As a general rule, that requires the production
of evidence that is "significant[ly] probative."  Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).  If the nonmovant fails to make
this showing, then summary judgment is appropriate.  Celotex, 477 U.S. at 324,
106 S.Ct. 2548.

       It is settled law that public employees "do not forego all the protections of the First
Amendment by virtue of working for the government."  Foley v. Town of Randolph,
598 F.3d 1, 5 (1st Cir. 2010).  "The First Amendment protects a public employee's right, in
certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti
v. Ceballos, 547 U.S. 410, 417, 126 S.Ct. 1951 (2006).  A public employee's statement is
protected activity when (1) in making it, the employee spoke as a citizen on a matter of

public concern, (2) the government employer did not have adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made and (3) the plaintiff can show that the protected expression was a substantial or motivating factor in the adverse employment decision.  Barton v. Clancy, 632 F.3d 9, 28 (1ˢᵗ Cir. 2011).  Stated inversely, retaliatory employment actions do not violate the First Amendment if: (1) the speech in question was "made pursuant to the employee's official duties," Garcetti, 547 U.S. at 413; or (2) the speech did not touch on a "matter of public concern," Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684 (1983); or (3) the interest of the government as an employer in "promoting the efficiency of the public services it performs" outweighs the interest of the employee in "commenting upon matters of public concern."   Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731 (1968).

        We start our analysis by outlining the different instances of speech that the summary judgment record shows were actually made by plaintiff : (1) the verbal communications, first to coworkers and later to Rodríguez, where he initially voiced his concern about what he considered was a suspicious alteration of the program participants' exit dates, (2) the detailed report which he prepared on the alleged tampering of said data dated September 25, 2008, together with its cover letter dated September 29, 2008 where he complained of other situations at Consorcio , (3) the testimony provided, and evidence submitted, to the prosecutor assigned by the Department of Justice to investigate the complaint submitted by Riera, (4) the letter requesting an investigation from the U.S. Department of Labor dated December 12, 2008 and (5) the letter requesting an investigation from the Government Ethics Office dated December 18, 2008.  Since, ultimately, plaintiff would have to establish that each of these instances, if found to be a protected expression, was a substantial or motivating factor in any adverse employment decision, we start by discarding those in which it is evident from the record that he will not

CIVIL 09-1383CCC                              9

be able to make such showing.  These include the December 12, 2008 letter to the
U.S. Department of Labor and the December 18, 2008 letter to the Government Ethics
Office, as the record plainly establishes that by the time those letters were sent by plaintiff
to each agency, all of the acts of retaliation of which he complains have already taken place.
It also includes the testimony and evidence provided by him to the P.R. Department of
Justice during the Riera-prompted investigation, since there is no evidence whatsoever that
anybody at Consorcio, let alone Rodríguez, actually knew that plaintiff had provided
testimony during that investigation and/or that he later produced evidence which he had
volunteered during that initial testimony.  See e.g. Chamberlin v. Town of Stoughton,
601 F.3d 25, 31 (1st Cir. 2010).

         We, thus, are left only with two instances of potentially protected speech: plaintiff's
verbal communications  with coworkers and Rodríguez and the subsequent written report
and cover letter addressed to Rodríguez dated September 25 and 29, 2008, respectively.
The facts as to its origins are undisputed: plaintiff observed that the exit dates for some
program participants had been altered at Consorcio's system following his return from sick
leave and verbally expressed his surprise and concern first to coworkers and later to
Rodríguez, who instructed him to put his imputations in writing.  He did so in a report which
he dated September 25, 2008, and which he finally delivered to Rodríguez attached to a
cover letter dated September 29, 2008.

         Following the prongs of analysis outlined above for protected speech in the public
employment context, as to these two instances of speech our first inquiry centers on
whether plaintiff spoke "as a citizen on a matter of public concern." In determining whether
La Santa  spoke as a "citizen," Garcetti is particularly instructive.  There, the Supreme Court
expressly held that "the First Amendment does not prohibit managerial discipline based on
an employee's expressions made pursuant to official responsibilities."  547 U.S. at 424,

CIVIL 09-1383CCC                           10

126 S.Ct. 1951.  The Court of Appeals has aptly explained the pertinent analysis under

Garcetti:

> The relevant inquiry under Garcetti thus has two basic components-(1) what
> are the employee's official responsibilities? and (2) was the speech at issue
> made pursuant to those responsibilities?-both of which are highly
> context-sensitive.  See Foley v. Town of Randolph, 598 F.3d 1, 7, 9
> (1st Cir. 2010) (emphasizing that the context of the plaintiff's speech was
> critical to [the] analysis and that the holding was limited to the particular facts
> of this case). Moreover, in identifying the employee's job responsibilities, the
> proper inquiry is practical" rather than formal, focusing on the duties an
> employee actually is expected to perform.  Garcetti, 547 U.S. at 424-25,
> 126 S.Ct. 1951.

> Mercado-Berríos v. Cancel-Alegría, 611 F3d 18, 26 (1st Cir. 2010).  As to the first

instance of speech - plaintiff's verbal communications on the data tampering - we have little

trouble concluding that it was not made as a citizen.[4]  Rather, following his discovery of an

apparent tampering with important data previously entered in Consorcio's system, plaintiff

had the unescapable duty to immediately report it, as he actually did.  He recognized as

much during his deposition, where he candidly acknowledged that he felt compelled to

report the situation fearing that he would be held responsible when eventually uncovered.

Plaintiff at the time was, after all, the Director of Management Information System at

Consorcio, and his reporting of any irregularities observed with the data entered in the

system was, in a practical sense, indeed a part of his duties.  Hence, under Garcetti, this

instance of speech was not protected under the First Amendment.

As to the written report dated September 25, 2008, a similar conclusion, and

essentially for the same reasons, is mandated.  Although in the report plaintiff makes

reference to prior incidents and situations at Consorcio as background for what he considers

could have motivated the data tampering, said document is, for the most part, a

comprehensive analysis on the alterations which he claims were performed together with

---

[4]  Plaintiff attempts to create an issue of material fact by conclusorily claiming in his
unsworn statement under penalty of perjury that he made the statements "[a]s a citizen."
Docket entry 31-4, at ¶ 8.

CIVIL 09-1383CCC                              11

his recommendations.   More importantly, the report was prepared pursuant to the
instructions of his superior, defendant Rodríguez, who specifically demanded from him that
it be prepared.  See Exhibit 12 to the Motion for Summary Judgment (docket entry 26).  In
a sense, the employer expressly required the employee to speak.  Cf. Mercado Berríos v.
Cancel-Alegría, 611 F.3d 18, 26 n.  (1st Cir. 2010).  Clearly, the report was speech that the
employee's "duties . . . required him to" make.  Garcetti,  at 422.  Hence, under Garcetti, it
is also unprotected speech under the First Amendment.

        The cover letter to the report, dated September 29, 2008, cannot be so easily
classified.  In it, plaintiff informs Rodríguez that the written report he requested on the data
tampering allegations had been completed and is attached to it.  Plaintiff, however, also
uses it as an opportunity to indicate that he intends to make other reports pertaining to
Consorcio's operations since Rodríguez assumed its administration and that he would
submit a grievance to the Government Ethics Office on a series of issues which included the
fraudulent tampering with data by Rodríguez and other employees, Rodríguez' extended
unauthorized absences from the office, Rodríguez' having authorized an employee to use
a Consorcio vehicle for personal matters, Rodríguez' appointment of an unqualified person
to a managerial position based only on his political affiliation, Rodríguez harassment against
him and other employees and the use of foul language by other employees and former
employees at Consorcio.

        It is true that the cover letter contained various complaints on the working
environment and the working conditions at Consorcio, an activity which plaintiff was not
expressly required to perform as part of his job duties.  Still, it is also true that in order to
make his statement on those working conditions at Consorcio, plaintiff took advantage of
one of his official duties--the submission of a written report on the data tampering which he
had previously verbally reported to his supervisor and which the latter specifically
commissioned him to do.  Thus, plaintiff's opportunity to "speak" at this particular instance

arose in the course of performing his official duties. Moreover, he prepared the cover letter in paper with the official letterhead of Consorcio, addressed it to Rodríguez in his capacity as Executive Director of Consorcio, and signed it as the Interim Director of MIS.

We find this situation to be akin to the factual scenario confronted by the Court of Appeals in Foley v. Randolph, 598 F.3d 1 (1st Cir. 2010), where it found that statements made by a chief of a fire department during a press conference held at the site of a fire, where he criticized inadequate funding and staffing of the fire department, and which resulted in his suspension was not speech protected by the First Amendment. In its inquiry into the protected status of speech, the Court observed that the context of Foley's speech was critical to its analysis, particularly noting that Foley, although not required to speak to the press as part of his job, chose to do so at a press conference convened by the State Fire Marshal while being in uniform and on duty at the time. The Court concluded that "[u]nder these circumstances, Foley addressed the media in his official capacity, as Chief of the Fire Department, at a forum to which he had access because of his position. Thus, 'there is no relevant analogue to speech by citizens.'" Foley, 598 F.3d at 7 (quoting Garcetti, 547 U.S. at 424, 126 S. Ct. 1951)).

In our case plaintiff chose to address in a cover letter, submitted as part of a report which he was required to prepare in the course of performing his official duties, with all the trappings of his position. We conclude that, as in Foley, his expressions in that letter were not made as a citizen and are not protected by the First Amendment.

For the reasons stated, plaintiff's claim under the First Amendment is DISMISSED.

Plaintiff's remaining constitutional claim is under the Due Process Clause, but it also fails. Given that the position of Director of MIS, which he occupied on an interim basis, was classified as one of trust under Puerto Rico law, it is firmly established that he lacked a property interest in it and, as such, cannot assert a procedural due process violation with respect to the transfer back to his career position. Maymí v. Puerto Rico Ports Authority,

CIVIL 09-1383CCC                                    13

515 F.3d 20, 29-30 (1st Cir. 2008).  Similarly, in light of the dismissal of his First Amendment claim, his contention of having been constructively discharged has dissipated, and the factual reality that remains before us is that he resigned to his career post. Under those circumstances, the allegation that defendants deprived him of his property interest in his career position without due process also collapses.  Monahan v. Romney, 625 F.3d 42, 47 (1st Cir. 2010).

Plaintiff's complaint also contains allegations of substantive due process violations as well as of being deprived of his liberty interest without due process.  However, the factual allegations fail to state a substantial due process claim, see Rivera v. Rhode Island, 402 F.3d 27, 35-36 (1st Cir. 2005) (substantive due process claim must involve "conscience-shocking" conduct by state officials) or to identify a deprivation of liberty interest claim, see Ogilbee v. Western Dist. Guidance Center, Inc., 658 F.2d 257 (4th Cir. 1981) (complaint suggesting that, as a result of mere act of his termination, some unspecified damage to employee's reputation had occurred was insufficient, without more, to allege a deprivation of a liberty interest).  Accordingly, all of plaintiff's claims under the Due Process Clause are also DISMISSED.

Having disposed of plaintiff's federal claims, we decline to exercise supplemental jurisdiction on the remaining claims under Puerto Rico law.  See 28 U.S.C. § 1367(c)(3); Marrero-Gutiérrez v. Molina, 491 F.3d 1, 7-8 (1st Cir. 2007).  Those claims are hereby also DISMISSED, albeit without prejudice.

For the reasons stated above, plaintiff's claims under the First Amendment and the Due Process Clause of the U.S. Constitution are DISMISSED, with prejudice.  His

CIVIL 09-1383CCC                              14

supplemental claims under the laws of Puerto Rico are DISMISSED, without prejudice. Judgment shall be entered accordingly.

      SO ORDERED.

      At San Juan, Puerto Rico, on March 31, 2011.


                            S/CARMEN CONSUELO CEREZO
                            United States District Judge